## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**RENEE BELL,**

       **Plaintiff,**

           **v.**

**ANDREW SAUL,**
**Commissioner of Social Security,**

       **Defendant.**

          **Case No. 2:18-cv-3359**
          **Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Renee Bell for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On December 24, 2013, Plaintiff filed her application for benefits,[1] alleging disability as of that date. R. 44–47, 81. The application was denied initially and upon reconsideration. R. 63–

---

[1] Plaintiff filed a prior application for Supplemental Security Income on February 23, 2011, which was denied by a different Administrative Law Judge on July 9, 2012. R. 29–40.

69. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 70–73.

Administrative Law Judge Douglass Alvarado ("ALJ") held a hearing on July 1, 2016, at which

Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R.

333–70. In a decision dated November 7, 2016, the ALJ concluded that Plaintiff was not

disabled within the meaning of the Social Security Act from December 24, 2013, the date on

which the application was filed, to the date of the administrative decision. R. 18–28A. That

decision became the final decision of the Commissioner of Social Security when the Appeals

Council declined review on January 12, 2018. R. 5–7. Plaintiff timely filed this appeal pursuant

to 42 U.S.C. § 405(g). ECF No. 1. On August 28, 2018, Plaintiff consented to disposition of the

matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the

Federal Rules of Civil Procedure. ECF No. 13.[2] On March 11, 2020, the case was reassigned to

the undersigned. ECF No. 33. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to

4

scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

5

416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

III.     **ALJ DECISION AND APPELLATE ISSUES**

The Plaintiff was 44 years old on the date her application was filed. R. 27.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 24, 2013, the application date. R. 20.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, asthma, bipolar disorder, depression and schizoaffective disorder. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 20–22.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 22–27. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a food service worker. R. 27.

At step five, the ALJ found that a significant number of jobs—*i.e*., approximately 68,660 jobs as an address clerk; approximately 241,910 jobs as a final assembler; approximately 2,944,420 as a document preparer—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 28. The ALJ therefore concluded that Plaintiff had not been disabled within the meaning of the Social Security Act since December 24, 2013, the date the application was filed. *Id*.

Plaintiff disagrees with the ALJ's evaluation of Plaintiff's mental impairments.[3]

---

[3] Plaintiff does not challenge the ALJ's evaluation of Plaintiff's physical impairments.

Plaintiff specifically challenges the ALJ's findings regarding her mental impairments at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 29. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 32.

## IV.   DISCUSSION

### A.   Step Three

Plaintiff challenges the ALJ's finding, at step three of the sequential evaluation, that Plaintiff's mental impairments do not meet or medically equal a listed impairment, specifically, Listings 12.03 and 12.04.[4] *Plaintiff's Moving Brief,* ECF No. 29, pp. 16–25. At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. § 416.920(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan,* 493 U.S. at 531

---

[4] Plaintiff apparently does not challenge the ALJ's finding that Plaintiff does not meet or medically equal Listing 12.06. *Plaintiff's Moving Brief,* ECF No. 29, pp. 7, 20, 24.

(emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, an ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the administrative decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id*.

At the time of the ALJ's decision on November 7, 2016, Listing 12.03 addressed schizophrenia, paranoia, and other psychotic disorders; Listing 12.04 addressed affective disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03, 12.04 (2016). In order to meet either of these Listings, a claimant must satisfy the criteria in these Listings' paragraph A and either the paragraph B or paragraph C criteria of these Listings. *Id*. The paragraph A criteria of Listing 12.03 are met if the claimant has a medically documented persistence, either continuous or intermittent, of one or more of the following:

    1. Delusions or hallucinations; or

    2. Catatonic or other grossly disorganized behavior; or

    3. Incoherence, loosening of associations, illogical thinking, or poverty of content
    of speech if associated with one of the following:
    a. Blunt affect; or
    b. Flat affect; or
    c. Inappropriate affect;

or

4. Emotional withdrawal and/or isolation[.]

*Id*. at § 12.03A. The paragraph A criteria of Listing 12.04 are met if the claimant has a medically

documented persistence, either continuous or intermittent, of one or more of the following:

1. Depressive syndrome characterized by at least four of the following:
a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking;

or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)[.]

*Id*. at § 12.04A.

The paragraph B criteria of Listings 12.03 and 12.04 are identical and are met when a

claimant has a marked limitation[5] of two of the following four mental functional areas: activities

---

[5] A "marked" limitation means that the claimant is seriously limited in her ability to function independently, appropriately, effectively and on a sustained basis in a specified area. *Id*. at § 12.00C.

of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id*. at §§ 12.03B, 12.04B.[6]

### 1.      Paragraph A criteria

In finding that Plaintiff's mental impairments neither meet nor equal Listings 12.03 or 12.04, the ALJ did not expressly consider the paragraph A criteria, but instead "considered whether the "paragraph B" criteria" were satisfied. R. 21. Plaintiff contends that the ALJ erred when he neither considered the paragraph A criteria of the Listings nor considered them in combination. *Plaintiff's Moving Brief*, ECF No. 29, pp. 19, 24. Plaintiff's argument is not well taken. As set forth above, a claimant must satisfy the criteria of <u>both</u> paragraphs A and B of Listings 12.03 and 12.04. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03, 12.04 (2016). Here, the ALJ fully analyzed whether Plaintiff met the paragraph B criteria. R. 21–22. Once the ALJ determined that Plaintiff did not satisfy the paragraph B criteria, there was no reason for him to expressly consider the paragraph A criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03, 12.04 (2016); *Lewis v. Comm'r of Soc. Sec*., No. 15CV06275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017) ("In reviewing a case, 20 C.F.R. Part.404, Subpart P indicates that a claimant must prove both Paragraph A and B criteria. The ALJ simply chose to proceed with a full analysis of Paragraph B, and, upon determining that Paragraph B was not satisfied, chose not to address Paragraph A as there would be no point given that the criteria for Paragraph B had already failed."). Accordingly, the ALJ's failure to explicitly consider the criteria of paragraph A of Listings 12.03 and 12.04 does not warrant remand.

---

[6] Plaintiff does not challenge the ALJ's finding that she did not meet the paragraph C criteria of Listings 12.03 and 12.04. *See generally Plaintiff's Moving Brief*, ECF No. 29, pp. 16–25.

2.        **Paragraph B criteria**

In considering the paragraph B criteria of the listings, the ALJ found that Plaintiff had

only a "moderate" limitation in her activities of daily living and in the area of concentration,

persistence and pace, a "marked" restriction in social functioning, and no episodes of

decompensation of extended duration. R. 21–22. Plaintiff challenges the ALJ's finding that

Plaintiff had only moderate limitation in the area of concentration, persistence or pace. *Plaintiff's*

*Moving Brief*, ECF No. 29, pp. 20–24. In finding only a moderate limitation in this area, the ALJ

reasoned as follows:

> With regard to concentration, persistence or pace, the claimant has moderate
> difficulties. I agree with DDS determination that her concentration, persistence and
> pace are moderately effected [sic] by her condition. In her function report and
> testimony she indicated that she spends most of her day watching television or
> doing a project, such as drawing, coloring or cooking. In her function report and
> testimony, she related difficulty concentrating, that she needs reminders to take
> medications, that she can no longer keep track of money, that she cannot follow
> written instructions well, and that she can only pay attention for five minutes. She
> also reported difficulty understanding and completing tasks. Nonetheless, her
> ability to take care of her personal needs independently, take care of her pets,
> perform household chores, prepare meals daily (testimony) follow a recipe, count
> change, handle a savings account, draw, color and watch television for extended
> periods shows an ability to think, to concentrate, to pay attention and to remember
> all of which negate a diagnosis of severe disabling symptoms. Thus, I have limited
> her to performing jobs involving no more than understanding, remembering and
> carrying out simple instructions with only occasional changes to essential job
> functions and making simple work-related decisions as this is supported by the
> findings of the State agency assessments at Exhibits 3A.

R. 21; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C3 (2016) (explaining that

concentration, persistence, or pace refers to "the ability to sustain focused attention and

concentration sufficiently long to permit the timely and appropriate completion of tasks

commonly found in work settings. Limitations in concentration, persistence, or pace are best

observed in work settings, but may also be reflected by limitations in other settings" and that

"major limitations in this area can often be assessed through clinical examination or

psychological testing. Wherever possible, however, a mental status examination or psychological test data should be supplemented by other available evidence").

Plaintiff raises a number of challenges to this finding. *Plaintiff's Moving Brief*, ECF No. 29, pp. 20−24. Plaintiff first contends that the ALJ should have found "marked" limitations in this area because evidence from her treating psychologist, Kate Waldron, Ph.D., A.P.N., establishes a marked limitation in this area. *Plaintiff's Moving Brief*, ECF No. 29, pp. 20−22. Plaintiff specifically argues that Dr. Waldron determined that Plaintiff had a marked limitation in the area of concentration, persistence or pace because Plaintiff could not meet competitive standards in sustaining an ordinary routine without special supervision, and could not complete a normal workday without interruptions from psychologically based symptoms, or perform at a consistent pace or deal with normal work stress. *Id*. at 22 (citing R. 314−15). However, as explained in more detail below, the ALJ properly discounted Dr. Waldron's opinions because they were internally inconsistent. R. 27.

Plaintiff also argues that evidence from the consultative examiner, Edward J. Linehan, Ph.D., supports a finding that she had marked limitations in concentration, persistence or pace. *Plaintiff's Moving Brief*, ECF No. 29, pp. 20−24. This Court disagrees. Dr. Linehan examined Plaintiff on April 11, 2014, noted, *inter alia*, that she "was unable to subtract from 100 by 7s or 3s … [or] to count backwards from 20 by 1s,"and opined that Plaintiff

> appears to be functioning on the level of an intellectually disabled person on a brief test of cognitive abilities.
>
> Any impairment in functioning should probably be considered on the basis of psychotic disorder, bipolar mood disorder and possible learning disabilities.
>
> This condition should be expected to continue for the next 12 months.

**<u>DIAGNOSTIC IMPRESSION</u>:**

> Psychotic disorder; bipolar mood disorder; panic disorder with some agoraphobia; learning disorder; asthma; herniated disk by report; inability to leave her apartment by herself and to work or socialize because of extreme paranoid feelings.

R. 286. Plaintiff insists that Dr. Linehan's opinion that Plaintiff appeared "'to be functioning on the level of an intellectually disabled person' on the basis of a psychotic mental disorder with paranoid features and a bipolar mood disorder affecting her cognition to the point where she was unable to muster sufficient concentration to count backwards from 20 by single digits (19, 18, 17 etc.)," supports a finding that she has marked limitations in her ability to maintain concentration, persistence or pace. *Plaintiff's Moving Brief*, ECF No. 29, p. 22. However, nowhere in his report does Dr. Linehan express an opinion regarding Plaintiff's ability to maintain concentration, persistence or pace. Based on this record, the Court cannot say that Dr. Linehan's opinions compel a finding that Plaintiff had a marked limitation in her ability to maintain concentration, persistence or pace.

Plaintiff goes on to criticize the ALJ's reliance on the opinions of the state agency reviewing experts, Dr. Flaherty and Dr. Gara, who found that Plaintiff had only moderate difficulty in maintaining concentration, persistence or pace. *Plaintiff's Moving Brief*, ECF No. 29, pp. 23–24; R. 21, 52, 304. However, these state agency experts—who are familiar with Social Security disability programs, *see* SSR 96-6p—specifically found that Plaintiff was only moderately or not significantly limited in her abilities to carry out very short and simple instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to make simple work-related decisions, to

complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 55−56, 308−09. These opinions provide substantial support for the ALJ's finding that Plaintiff had only a moderate limitation in her ability to maintain concentration, persistence or pace. *Id*.

Nevertheless, in attacking the state agency experts' opinions, Plaintiff first argues that "all of the evidence from the psychologists who treated or examined plaintiff indicates a near-total inability to maintain concentration, focus, persistence and pace;" she argues that there exists "universal agreement from treating and examining sources that plaintiff cannot maintain CPP [concentration, persistence or pace][.]" *Plaintiff's Moving Brief*, ECF No. 29, p. 23. This argument overstates the evidence. As explained above, Dr. Linehan did not in fact articulate any deficiencies in Plaintiff's ability to maintain concentration, persistence or pace, *see* R. 286.

Plaintiff also questions the ALJ's reliance on the state agency experts' opinions in this area of functioning in light of the ALJ's finding of "marked" difficulty in maintaining social functioning "when those same DDS consultants, on that same page, assigned only 'mild' difficulties in maintaining social functioning (Tr.52)?" *Plaintiff's Moving Brief*, ECF No. 29, p. 23. To the extent that Plaintiff suggests that, if an ALJ adopts one aspect of the state agency experts' opinions, the ALJ must adopt all aspects of their opinions, Plaintiff cites no authority for that proposition. *Id*. Moreover, as is discussed in more detail below, substantial evidence supports the ALJ's consideration of Plaintiff's limitations in the area of social functioning.

Plaintiff also attacks the state agency experts' opinions, rendered in April 2014 and March 2015, for having been rendered without the benefit of Dr. Waldron's May 2016 report. *Plaintiff's Moving Brief*, ECF No. 29, p. 24. However, an ALJ may rely on a state agency

15

expert's opinion even when additional medical evidence is later submitted. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available."). Here, Plaintiff generally asserts that the state agency experts were "necessarily ignorant of Dr. Waldron['s 2016 findings,]" *Plaintiff's Moving Brief*, ECF No. 29, p. 24, but as was previously noted and is discussed in more detail below, the ALJ properly discounted Dr. Waldron's opinions as internally inconsistent. R. 27. Accordingly, the ALJ implicitly found that Dr. Waldron's report and opinions did not undermine the state agency experts' opinions; the ALJ's reliance on the state agency experts' opinions was therefore not improper. *See Chandler*, 667 F.3d at 361.

Finally, Plaintiff argues in passing that the state agency experts made their assessments "in brazen disregard of the conclusions of Dr. Linehan (psychotic, functioning as an intellectually disabled person, unable to handle benefits if awarded)[.]" *Plaintiff's Moving Brief*, ECF No. 29, p. 24. Plaintiff's argument is not well taken. Dr. Flaherty, the state agency expert who conducted the initial review, expressly included Dr. Linehan's report in her review of the evidence of record, R. 47, 50−52, and Plaintiff offers no evidence that Dr. Gara, who conducted the review on reconsideration, overlooked this report, R. 60, 294−311. In addition, as previously

discussed, Dr. Linehan did not identify any deficiencies in Plaintiff's ability to maintain concentration, persistence or pace. R. 286.

For all these reasons, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff had only a moderate limitation in her ability to maintain concentration, persistence, or pace. *Cf. Orr v. Comm'r Soc. Sec.*, 805 F. App'x 85, 89 (3d Cir. 2020) ("Substantial evidence supports that finding [of moderate difficulties in maintaining concentration, persistence or pace] because [the claimant] spent time online searching for auto parts; he read magazines; he watched a lot of politics and history on television; and he got six to seven hours of sleep a night, despite being awakened by discomfort in his leg."); *Parks v. Comm'r of Soc. Sec.*, 401 F. App'x 651, 655 (3d Cir. 2010) (agreeing with the ALJ who found that the ability to read, watch television, and play video games "required a degree of concentration, persistence, or pace" and holding "that when all of the testimony is considered together, substantial evidence supports the ALJ's finding of moderate limitations in concentration, persistence, or pace").

### B.   Mental RFC

Plaintiff argues that the ALJ erred when crafting Plaintiff's mental RFC. *Plaintiff's Moving Brief*, ECF No. 29, pp. 25–37. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). It is the ALJ who is charged with determining a claimant's RFC. 20 C.F.R. § §416.927(e), 416.946(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only

"credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she must be able to sit for 1-5 minutes at the workstation after 30 minutes of standing or walking. She can frequently reach overhead and in all directions with left, nondominant arm. The claimant can frequently climb ramps and stairs; can occasionally climb ladders, ropes and scaffolds; and can frequently stoop, kneel, crouch and crawl. She can have occasional exposure to wetness, fumes, odors, dust, pulmonary irritants, extreme cold and extreme heat. The claimant is able to understand, remember and carry out simple instructions with only occasional changes to essential job functions; and is able to make simple work-related decisions. She can occasionally interact with supervisors and coworkers, but cannot work on team or in tandem with coworkers; and can never interact with the public.

R. 22. The ALJ went on to explain the mental limitations included in the RFC as follows:

> In giv[ing] consideration to the claimant's maximum residual functional capacity and identifying the claimant's mental impairment-related limitations in specific work-related terms with appropriate rationale and specific reference to evidence of record in support of the assessed limitations, I conclude that the evidence fails to support the claimant's assertions of total disability. The residual functional capacity outlined above accounts for the claimant's testimony that is consistent with the medical evidence of record, regarding vocational limitations that her condition would place on her. Although the claimant suffers some limitation due to her impairments, and as a result, her capacity to perform work is affected, I find that the claimant retains the residual functional capacity to perform the basic mental demands of work related activity, with additional limitations as noted above. Specifically, the residual functional capacity outlined above, accounts for the

18

claimant's reports that she has issues with social functioning that affect her ability to interact independently, appropriately, effectively and on a[] sustained basis with other individual[s] and difficulties with concentration that affect her ability to concentrate[e] and remember. These are a result of her paranoia, depression and anxiety and the residual functional capacity outlined above provides for these limitations.

R. 22–23. In making this RFC determination, the ALJ detailed record evidence, including, *inter alia*, evidence that Plaintiff experienced feelings of paranoia and hallucinations; that she attends therapy twice a week; that she is prescribed psychotic medications; and that treatment records from 2015 and 2016 reveal that her condition improved with treatment and medication, that she did not require any psychiatric hospitalizations, and that other than occasional bouts of depression, her mood was neutral, her appearance was unremarkable, her insight was partially intact, her judgment was intact, her thought processes were goal directed, she was oriented times three, her speech was normal, her recent and remote memory was intact, and her overall condition was "stable;" and that she is able to leave her apartment and socialize, although with limitations. R. 22–27. The ALJ also specifically considered Plaintiff's testimony that she lives with her husband and accompanies him to the grocery store, the laundromat, and the pharmacy; that she accompanies her husband on visits to her mother and her mother-in-law; that she cares for her dog and cat and prepares meals for herself and her husband; that she follows recipes but asks for her husband's help when she needs assistance; and that, during the day, she watches television and works on projects such as drawing, coloring, or looking up recipes. R. 342, 349–53, 356 –57. The ALJ also expressly noted that, although Plaintiff testified that she does not leave the house alone, R. 349, she also testified that she walks her dog by herself, R. 351. R. 24. Plaintiff also testified that she visits family members regularly, either in person or by telephone. R. 350, 356–57. This record unquestionably contains substantial evidence to support the ALJ's

mental RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff argues that the ALJ's RFC finding that Plaintiff can "occasionally interact with supervisors and coworkers," R. 22, is inconsistent with the ALJ's finding, at step three of the sequential evaluation, that Plaintiff has "marked" difficulties in social functioning, R. 21. *Plaintiff's Moving Brief*, ECF No. 29, pp. 28−37 (citing SSR 83-10 for the proposition that "occasionally" means occurring from very little up to one-third of the time). Plaintiff's argument is not well taken.

As a preliminary matter, Plaintiff cites no authority for the proposition that a finding of marked limitation in the area of social functioning necessarily means that a claimant is entirely unable to function in that area. *See Plaintiff's Moving Brief*, ECF No. 29, pp. 28−37; *see also Wanamaker v. Berryhill*, No. 18-58, 2019 WL 1207510, at *2 (W.D. Pa. Mar. 14, 2019) ("While not unanimously so, courts have repeatedly indicated that a limitation to occasional social interactions is not necessarily inconsistent with even marked limitations in social functioning.") (collecting cases). Moreover, as the Commissioner points out, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 32, pp. 17−18, "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *See also Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id.* Instead, the step two and three "findings need only be 'adequately conveyed' in the ALJ's statement of the limitation, not recited verbatim." *Id.* at 210 (citing *Ramirez v. Barnhart*, 372 F.3d 546, 552 n.2, 554 (3d Cir. 2004)). Here, as previously discussed, the ALJ adequately conveyed in his RFC

findings Plaintiff's difficulties in social functioning as were identified at step three. R. 21–27.

Substantial evidence supports this determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399

F.3d at 554.

### C. Evaluation of Treating and Examining Psychologists

Plaintiff also challenges the ALJ's evaluation of the opinions of Dr. Waldron, Plaintiff's

treating psychologist, and Dr. Linehan, the consultative examining psychologist. *Plaintiff's*

*Moving Brief*, ECF No. 29, pp. 32–37. "'A cardinal principle guiding disability eligibility

determinations is that the ALJ accord treating physicians' reports great weight, especially when

their opinions reflect expert judgment based on a continuing observation of the patient's

condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204,

209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also*

*Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ

should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d

at 43 (stating that a treating physician's opinions "are entitled to substantial and at times even

controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to

controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'"

*Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. §

404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir.

2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and

inconsistent with the other evidence in the record."). "In choosing to reject the treating

physician's assessment, an ALJ may not make speculative inferences from medical reports and

may reject a treating physician's opinion outright only on the basis of contradictory medical

evidence and not due to his or her own credibility judgments, speculation or lay opinion."

*Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating provider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 416.927(c)(1)–(6); *see also* SSR 96-2p. Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). Finally, "'[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]'" *Chandler*, 667 F. 3d at 361 (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011)).

Here, the ALJ considered Dr. Waldron's opinions, but did not assign them controlling weight, reasoning as follows:

On May 9, 2016, Dr. Waldron reported that the claimant was noted to have the following signs and symptoms; fluctuating anhedonia, history of suicidal ideation, feelings of guilt and worthlessness, impairment in impulse control, mood disturbance, difficulty thinking or concentrating, psychomotor agitation, apprehensive expectation, paranoid thinking, history of substance dependence, emotional withdrawal or isolation, history of intense and unstable interpersonal relationships, visual and auditory hallucinations, motor tension, emotional []ability, pressure of speech, automatic hyperactive or hyperactivity, sleep disturbances and history of involvement in activities that have a high probability of painful consequences which are not recognized. Dr. Waldron reported the claimant has mild restrictions in activities of daily living, marked difficulties in maintaining social functioning and marked difficulty in maintaining concentration, persistence and pace. Dr. Waldron further noted that claimant is:

1. unlimited in her ability to understand, remember and carry-out short and simple instructions and adhere to basic standards of neatness and cleanliness;

2. limited but satisfactory in remembering work-like procedures, maintaining attention for two hour segments, making simple work-related decisions, asking simple questions or requesting assistance, interacting appropriately with the general public and maintaining social appropriate behavior;

3. seriously limited in understanding, remembering and carrying out detailed instructions, setting realistic goals, dealing with stress of semiskilled and unskilled work, working in coordination with or proximity to others without being unduly distracted, accepting instructions or responding appropriately to criticism from supervisors, getting along with coworkers or peers, responding appropriately to changes in routine work setting, traveling to unfamiliar places and using public transportation; and

4. unable to meet competitive standards with regard to maintaining regular attendance, sustaining an ordinary routine without special supervision, completing a normal workday/workweek without interruptions, and performing at a consistent pace without an unreasonable number or length of rest periods.

Dr. Waldron further noted that claimant would be absent from work more than four days per month but can manage benefits in her own best interest. This opinion was rendered by the claimant's treating psychologist. However, I find this opinion is internally inconsistent in that Dr. Waldron reports that the claimant is capable of maintaining attention for two hour segments, asking simple questions or requesting assistance, interacting appropriately with general public and maintaining socially appropriate behavior, but has serious limitations in accepting instructions or

responding appropriately to criticism from supervisors, getting along with coworkers or peers, and responding appropriately to changes in routine work setting (Exhibit 12F). Nor is this opinion consistent with regard to claimant's satisfactory ability to remember work-like procedures, maintain attention for two-hour segments, and make simple work-related decisions, and Dr. Waldron's conclusion that the claimant has marked limitations in concentration, persistence and pace. Accordingly, this opinion is considered but not given controlling weight.

R. 26–27. The Court finds no error in the ALJ's analysis in this regard. Although Plaintiff insists

otherwise, the Court also agrees with the ALJ that Dr. Waldron's opinions are internally

inconsistent. Indeed, it is difficult to reconcile Dr. Waldron's characterization as "limited but

satisfactory" Plaintiff's ability to engage in and follow work-like procedures, including "asking

simple questions or requesting assistance," with her characterization as "seriously limited"

Plaintiff's ability to "accept[] instructions or respond[] appropriately to criticism from

supervisors." Moreover, Dr. Waldron's opinions are inconsistent with Plaintiff's testimony that

she lives with her husband, she prepares meals and follows recipes, she is able to ask her

husband for help when needed, she accompanies her husband to the store and pharmacy, she

attends therapy every week, and she regularly visits with extended family. R. 21, 23, 342, 349–

53, 356–57. For these reasons, the Court concludes that substantial evidence supports the ALJ's

evaluation of Dr. Waldron's opinions. *See Wimberly v. Barnhart*, 128 F. App'x 861, 863 (3d Cir.

2005) (holding that the ALJ did not err by refusing to assign controlling weight to a treating

physician's opinion that "was itself internally inconsistent"). Accordingly, remand on this basis

is not warranted. *See Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012)

("[W]e will uphold the ALJ's decision even if there is contrary evidence that would justify the

opposite conclusion, as long as the 'substantial evidence' standard is satisfied.").

Plaintiff's challenge to the ALJ's evaluation of Dr. Linehan's opinions is also unavailing.

*Plaintiff's Moving Brief*, ECF No. 29, pp. 32, 37. According to Plaintiff, the ALJ assigned only

partial weight to Dr. Linehan's opinions because a single treatment note, from August 2014, reported that Plaintiff's mood was stable which, Plaintiff contends, the ALJ improperly equated with improvement. *Id*. This argument misses the mark. The ALJ accorded only partial weight to Dr. Linehan's opinions because his findings and opinions were inconsistent with Plaintiff's own testimony:

> On April 1, 2014, Dr. Linehan found claimant had an inability to leave her apartment by herself and to work or socialize due to paranoid feelings and that any funds awarded should be handled by a representative payee (Exhibit 6F). This opinion was rendered by an examining psychologist with program knowledge. This opinion is given partial weight and is incorporated, in part, into the claimant's residual functional capacity. However, as noted above, the claimant, in fact, does leave her apartment and socialize, albeit with limitations. Therefore, the claimant's residual functional capacity limits her to minimal contact with others in the work setting due to marked limitations in socialization but does not preclude all social interaction.

R. 26. The Court finds that the ALJ properly discounted Dr. Linehan's opinions to the extent that they were inconsistent with other record evidence. *See* 20 C.F.R. §§ 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *cf. Samah v. Comm'r of Soc. Sec.*, No. CV 17-08592, 2018 WL 6178862, at *6 (D.N.J. Nov. 27, 2018) (finding that substantial evidence supported the ALJ's decision to discount a treating physician's opinion where, *inter alia*, the "opinion was not consistent with the Plaintiff's own testimony").

In short, the Court concludes that the ALJ's findings regarding Plaintiff's mental RFC are consistent with the record evidence and enjoy substantial support in the record.

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  January 28, 2021                 *s/Norah McCann King*
                                                   NORAH McCANN KING
                                 UNITED STATES MAGISTRATE JUDGE